**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|  |  |
|---|---|
| | * |
| **KESTON WHITEHURST,** | |
| | * |
| **Plaintiff,** | |
| | * |
| **v.** | **Case No.: GJH-20-484** |
| | * |
| **WARDEN RICHARD DOVEY,** *et al.,* | |
| | * |
| **Defendants.** | |
| | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

While incarcerated at the Maryland Correctional Training Center, Plaintiff Keston

Whitehurst filed this Section 1983 action against Defendant Richard Dovey, warden of the

correctional facility, and several other officers at the facility. *See* ECF Nos. 1, 7. Pending before

the Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF

No. 24. A hearing on the Motion is not necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the

reasons stated below, the Court will grant the motion in part and deny it in part.[1]

---

[1] Also pending are Motions for Extension of Time, ECF Nos. 22, 25, 27, which are granted. The Motion for
Attorney Appearance on behalf of Plaintiff, ECF No. 19, is granted, thus Plaintiff's earlier Motion to Appoint
Counsel, ECF No. 18, is denied as moot. The Motion for Substitution of Counsel and Strike Appearance of Counsel,
ECF No. 21, is also granted.

## I.      BACKGROUND[2]

In the Complaint and the supplement, Plaintiff alleges that when he was housed at the Maryland Correctional Training Center, he was sexually assaulted by fellow inmates on two separate occasions. *See* ECF Nos. 1, 7.[3] Plaintiff also alleges a third incident in which another inmate physically assaulted him and broke his jaw. ECF No. 7 at 6; ECF No. 28-1 ¶ 10.[4] Defendants dispute the veracity of Plaintiff's allegations, as well as Defendants' responsibility for them. ECF No. 24-1.

Plaintiff, *pro se* at the time, filed the Complaint on February 24, 2020, alleging that officers at the facility showed deliberate indifference to his safety in violation of his constitutional rights. ECF No. 1. Plaintiff did not name a defendant. The Court granted Plaintiff 28 days to supplement the Complaint, explaining to Plaintiff that he must name the individuals he claims were responsible for the wrongdoing, the dates of the incidents, and the facts supporting his claim. ECF No. 2. Plaintiff filed motions requesting legal counsel. ECF Nos. 4, 5. On August 14, 2020, the Court again ordered Plaintiff to supplement the Complaint and warned the Plaintiff that failure to comply would result in dismissal without prejudice. ECF No. 6.

Plaintiff filed the supplemental to the Complaint on September 11, 2020. ECF No. 7. Plaintiff named as Defendants Orlando Perry, the inmate Plaintiff says assaulted him; Richard Dovey, then the Warden of the Maryland Correctional Training Center; and several officers at

---

[2] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party. Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] The Complaint and the supplement to the Complaint were written when Plaintiff was *pro se*, so the Court construes these documents liberally. *See Spencer v. Earley*, 278 Fed. App'x 254, 259–60 (4th Cir. 2008).

[4] Plaintiff incorporated allegations from the Complaint and the supplement to the Complaint into the affidavit attached to his Response. *See* ECF No. 28-1 ¶¶ 6, 8.

the facility: Lieutenant Willis Hendershot, Captain Kellar Covington, Lieutenant Dwayne Draper, Officer Shawn Wiles, Officer Justin Blair, Sergeant Shannon Singleton, Officer Michael Cunningham, Officer Ferraro,[5] Officer Matthew Nasuti, Officer Wright,[6] and Lieutenant Kevin Tew. *See* ECF No. 7; ECF No. 24-1.

The Court dismissed Perry from the action, as Perry is not a state actor. ECF No. 11. The Court granted *in forma pauperis* status and ordered the remaining Defendants served. *Id.* Counsel then entered an appearance for Plaintiff. *See* ECF No. 19. On August 1, 2021, Defendants filed the Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion for Summary Judgment. ECF No. 24. Plaintiff responded. ECF No. 28.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal

---

[5] Defendant Ferraro is named "Ferlro" in the supplement to the Complaint and Plaintiff's affidavit, and his first name is not given in any of the briefs. *See* ECF No. 28-1 ¶ 10.

[6] Officer Wright's first name was also not given.

conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 24. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . ,

admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(a); *see also Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only genuine if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). To obtain Rule 56(d) relief, the non-moving party bears the burden of showing

how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (internal citation and quotation marks omitted).

## III.   DISCUSSION

Plaintiff claims that Defendants violated his constitutional rights through deliberate indifference to the serious and known risks to Plaintiff's personal safety. ECF No. 28 at 1. Defendants contend that Plaintiff failed to establish a violation of constitutional rights, that Plaintiff has failed to establish a claim against any Defendant in particular, and that Defendants are entitled to qualified immunity. ECF No. 24-1 at 10, 13, 16.

"In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.'" *Scott v. Harris*, 550 U.S. 372, 377, 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . .  in light of the specific context of the case.'" *Id.* Thus, the Court first looks at whether Plaintiff has established violation of a constitutional right, and next whether the right was clearly established.[7]

### A.  Deliberate Indifference

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. *See* 42 U.S.C. § 1983 (2012); *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707, 119 S. Ct. 1624 (1999)

---

[7] The Court considers material from outside the pleadings and thus treats the motion as one for summary judgment.

("Section 1983 authorizes a party who has been deprived of a federal right under the color of state law to seek relief[.]"). The Eighth Amendment of the United States Constitution forbids punishment that involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925, 49 L. Ed. 2d 859 (1976).

"However, not all Eighth Amendment violations are the same." *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). "The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance." *Id.*; *see also Best v. Baltimore Cty.*, No. 19-cv-2344-ELH, 2021 WL 878351, at *11 (D. Md. Mar. 9, 2021).

"The deliberate indifference standard is a two-pronged test: (1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97–98 (citing *Farmer*, 511 U.S. at 834, 837–38). This subjective standard "requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). During a summary judgment analysis, a court "'may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.'' *Burkey v. Baltimore Cty.*, No. 20-cv-2006-GJH, 2021 WL 3857814, at *9 n.7 (D. Md. Aug. 30, 2021) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). In addition to meeting both the objective and subjective prongs, Plaintiff must allege an injury or substantial risk of injury that is "more than de minimis[,]" *Robles v. Prince George's Cty. Maryland*, 302 F.3d 262, 269 (4th Cir.

2002), and "the record must at least reflect a genuine dispute as to the specific defendant's involvement in causing the alleged injury[,]" *Burgess v. Baltimore Police Dep't*, No. 15-cv-834-RDB, 2017 WL 4947004, at *9 (D. Md. Oct. 31, 2017).

A prisoner may bring a "deliberate indifference" claim based on prison officials' failure to ensure a prisoner's reasonable safety. *See Farmer v. Brennan*, 511 U.S. 825, 844–45, 114 S. Ct. 1970, 1983, 128 L. Ed. 2d 811 (1994)). "The Constitution requires prison officials to ensure 'reasonable safety,' a standard that acknowledges prison officials' 'unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]'" *Bost v. Wexford Health Sources, Inc.*, No. 15-cv-3278-ELH, 2018 WL 3539819, at *22 (D. Md. July 23, 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 845, 114 S. Ct. 1970, 1983, 128 L. Ed. 2d 811 (1994)). "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

"[I]n order to prevail on a claim of failure to protect from violence, plaintiff must establish that defendant exhibited deliberate or callous indifference to a specific known risk of harm." *Roberts v. Taniguchi*, No. 12-cv-1187, 2012 WL 5252288, at *5 (D. Md. Oct. 23, 2012) (citing *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987)). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. "'[D]eliberate indifference' is a form of *mens rea* (or 'guilty mind') equivalent to criminal-law recklessness. In our Circuit, liability under this standard requires two showings: '[T]he prison official must have both 'subjectively recognized a risk of substantial harm' and

'subjectively recognized that his actions were inappropriate in light of that risk.'" *Campbell v. Florian*, 972 F.3d 385, 395 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (quoting *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017)). "Thus, '[d]eliberate indifference is a very high standard,' and 'a showing of mere negligence will not meet it.'" *Id.* (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)).

With these principles in mind, the Court looks to whether Plaintiff has established that these Defendants showed "deliberate indifference" to a specific and known "substantial risk of harm" to Plaintiff. *See Farmer*, 511 U.S. at 844; *Campbell*, 972 F.3d at 395.[8]

### 1. February 15 Incident

On February 14, Plaintiff was moved into a cell with a prisoner named Juhan Brown. *See* ECF No. 28-1 ¶ 4. Plaintiff says that Brown was using k-2, an illicit drug, and made sexually aggressive remarks to Plaintiff. *See* ECF No. 1 at 2. Plaintiff attests that he alerted Defendants Nasuti, Cunningham, Covington, and Tew that "inmate Brown a/k/a New York put my health, safety, and welfare at risk" and that Plaintiff "wanted to be moved out of the cell fearing a sexual assault by him." ECF No. 28-1 ¶ 4. Plaintiff says that he wrote a complaint to alert Defendants of his fear of Brown. *Id.* Plaintiff states that Defendant Covington denied Plaintiff's request to be moved. *Id.* Plaintiff was told that "what [he] wrote wasn't enough to grant" a move to a new cell and that, if Plaintiff received a "ticket" for refusing his housing, his release date would be impacted. ECF No. 1 at 2.

---

[8] In the supplement, Plaintiff also references incidents from July and August 2020. *See* ECF No. 7 at 13, 15. It is unclear what claims Plaintiff is making, other than a general complaint about receiving diminution credits and an assertion that Plaintiff wanted to be transferred to a new institution. *Id.* at 13. Plaintiff only makes generalized assertions about his safety and even states that he refused protective custody because he "did not believe [he] was in danger of harm" at the time. *See* ECF No. 7 at 13. These facts do not state a constitutional deprivation claim.

Plaintiff states that Brown sexually assaulted him on February 15. ECF No. 28-1 ¶ 6. Plaintiff attests that he promptly told Defendant Nasuti of the sexual assault and wrote a complaint. *Id.* ¶ 7. However, no officer returned to take an incident report or take an informal complaint for the entirety of February 15. *Id.* Plaintiff also says that he then called his aunt to report what happened. ECF No. 1 at 2.

In response, Defendants offer an incident narrative from an internal investigation into Plaintiff's claims. *See* ECF No. 24-3 at 5, 51. According to the incident report, Plaintiff first reported the assault to a nurse. *See id.* at 5. After Plaintiff made the allegation, Plaintiff was transferred to the Meritus Medical Center for an examination. *Id.* A rape kit test was performed, the results of which showed DNA from a male that was not Plaintiff's cellmate. *See id.* at 6. Plaintiff reported that he had had consensual sex with another inmate before the assault. *Id.* Brown also denied Plaintiff's accusation. *Id.* at 53, 56. The report was closed as "unfounded" due to lack of evidence, and Plaintiff was informed. *Id.*[9]

Defendants also offer a recording of Plaintiff's phone call with his aunt, where Plaintiff tells his aunt that he is frustrated with some of the remarks that other inmates make to him regarding his sexuality. *See* ECF No. 24-11, Exhibit 1a, 3:42–3:58, 4:20–4:53. Plaintiff tells his aunt that his new cellmate's use of k-2 is also exasperating. *See id.* 5:45–6:10. Plaintiff says that he is worried about the second-hand smoke and associated health problems. *Id.* at 13:20–14:08. In the supplement to the Complaint, Plaintiff states that he "wrote in the incident statement that I needed to be moved out of [the cell] because I did not feel safe being housed in a cell with an inmate who smoked k-2 repeatedly." ECF No. 7 at 3.

---

[9] Brown denies Plaintiff's accusation. *See* ECF No. 24-3 at 53, 56.

Defendant Covington also states in his affidavit that he was not working on this day, and further, he normally worked the 8–4 shift, and Plaintiff's request to move came during the 4–12 shift. *See* ECF No. 24-5 ¶ 4. Defendant Cunningham stated that he was the commander during the relevant shift, and he had no knowledge of Plaintiff's fears. *See* ECF No. 25-6 ¶ 4. Cunningham attests that he has no knowledge of any other staff member knowing of Plaintiff's concerns. *Id.* ¶ 5.

Plaintiff has made very serious allegations regarding sexual assault, and these are enough to meet the "objective" prong. *See Farmer*, 511 U.S. at 834. However, Plaintiff has failed to establish a dispute of fact as to Defendants' "'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991)). Plaintiff must establish that prison officials "actually knew of a substantial risk" to Plaintiff's safety. *See Farmer*, 511 U.S. at 844. Plaintiff has failed to establish any dispute of fact as to knowledge of the risk to Plaintiff's safety, and what allegations he does make are controverted by the record. The evidence establishes that Plaintiff did request to change cells, but his request was related to his cellmate's smoking. *See* ECF No. 7 at 3. Plaintiff stated in the incident report, "I told them that I didn't feel safe or healthy staying in that cell with a cellmate who smokes back-to-back." *See* ECF No. 24-3 at 57. Plaintiff states that he "didn't say more" because another inmate was listening. *Id.* Even viewing the record in a light favorable to Plaintiff, Plaintiff failed to alert Defendants to the specific risk he faced.

Plaintiff has established no other facts to suggest how any Defendant was "personally" involved in the constitutional violation. *See, e.g.*, *Atkins v. Maryland Div. of Correction*, No. 14-cv-3312-PWG, 2015 WL 5124103, at *6 (D. Md. Aug. 28, 2015) ("Under § 1983, individual liability must be based on personal conduct . . . The mere fact that [defendant] denied [a]

grievance does not alone impose liability.") (citing *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). Finally, even if prison officials did know of a specific risk to Plaintiff's safety, they may be found free from liability if they responded reasonably, "even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. From Defendants' evidence, it appears that Defendants did respond reasonably and promptly to Plaintiff's allegations of sexual assault when Plaintiff first reported them. *See* ECF No. 24-3 at 2, 4, 55, 68. Thus, summary judgment is granted to Defendants on this claim.

### 2. February 16 Incident

Plaintiff states that, after the February 15 assault, he was moved into another cell with an inmate named "GreenHawk." ECF No. 28-1 ¶ 8. His new cellmate also smoked k-2 and had a violent history. ECF No. 1 at 3. The new inmate threatened to stab Plaintiff and then also sexually assaulted Plaintiff. ECF No. 1 at 3, 5; ECF No. 28-1 ¶ 8. Plaintiff was then taken to a medical evaluation for his first alleged sexual assault incident. ECF No. 28-1 ¶ 9. Plaintiff says that a rape kit was performed on him and that, afterwards, he was returned to his cell with the same cellmate. ECF No. 1 at 5. The inmate confronted him, saying that Plaintiff had lied about the sexual assault. *Id.* The inmate stated that he had given all of Plaintiff's belongings away in retaliation. *Id.*

Defendants respond that there is no evidence of this second assault nor Plaintiff's time with "GreenHawk." *See* ECF No. 24-1 at 6. Plaintiff did not mention it during his medical evaluation on February 17, and there was no complaint made. *See* ECF No. 24-3 at 5. In the investigation report regarding the February 15 alleged assault, there is no mention of a second assault. *Id.* The record shows that Plaintiff was involved in an altercation with Defendant Nasuti on the evening of February 15 regarding Plaintiff's refusal to get off the phone and go back to his

assigned floor. *See* ECF No. 24-3 at 62; ECF No. 24-4 at 6. Plaintiff was charged with rule

violations. *See* ECF No. 24-4 at 10. Plaintiff was then moved an administrative segregation unit

to await a hearing on the rule violations. *See* ECF No. 24-6 ¶ 4. Plaintiff does not challenge

Defendants' proffered evidence. Thus, summary judgment is granted to Defendants on this

claim.

### 3.   February 23 Incident[10]

Plaintiff states that he was moved to a new cell with an inmate named Orlando Perry.

ECF No. 28-1 ¶ 10. Plaintiff says that he informed Defendant Ferraro on February 22 that he was

afraid of Perry and wanted to be moved. *Id.* Plaintiff says he kicked the cell door repeatedly to

get Ferraro's attention. ECF No. 7 at 6, 7. When Ferraro came to the cell, Plaintiff told Ferraro

that Perry did not want a gay roommate and had heard that Plaintiff had alleged that his former

roommate had committed sexual assault against him. *Id.* Plaintiff reported to Ferraro that

Plaintiff "had to move out . . . right then or else [Perry] was going to assault me." *Id.* at 6.

Ferraro told Plaintiff that Ferraro "would not move [Plaintiff] for any reason" that the two

inmates needed to figure out how to get along. *Id*. at 7; *see also* ECF No. 28-1 ¶ 10. Otherwise,

Ferraro suggested that the inmates would need to "fight each other" to get a cell change. ECF

No. 7 at 7. Plaintiff also states that he put in a request for protective custody "to avoid being

celled with violent inmates . . . who [do] not like 'gay' inmates[.]" ECF No. 7 at 6–7.

When Defendant Wiles came on his shift on February 23, Plaintiff kicked on his door

again. ECF No. 28-1 ¶ 10. When Wiles approached the door, Plaintiff told him that Perry would

assault him. *Id.*; *see also* ECF No. 7 at 8. Plaintiff begged Wiles to not leave him inside the cell

---

[10] Plaintiff states that the third incident happened on February 20, ECF No. 28-1 ¶ 10, but the incident report, medical report, and video are all dated February 23, *see* ECF No. 24-3 at 83, 86, 88.

with Perry. *Id.* Wiles said that he needed to finish his rounds. *Id.* Just as Wiles walked away, Perry hit Plaintiff directly in the jaw, fracturing it. ECF No. 28-1 ¶ 10; *see also* ECF No. 7 at 8. Perry continued to beat Plaintiff until Wiles and other officers arrived. *Id.* After the assault, Plaintiff was moved to the medical unit. Plaintiff provides a medical consultation form stating that Plaintiff was in "moderate distress" and "can mumble words but is unable to open his jaw." ECF No. 7-1 at 2. The report also stated that Plaintiff would be sent to the ER for a possible broken jaw. *Id.* Plaintiff's jaw was also x-rayed, ECF No. 7-1 at 5, and other medical reports note that Plaintiff was given a "wire fixation" for a jaw fracture, ECF No. 7-1 at 8.

Plaintiff also provides a Notice of Rule Violation, which stated that Defendant Wiles was conducting a count of Plaintiff's tier when he "observed both inmates in the cell exchanging close fisted blows to each other. I ordered them to stop fighting and called for assistance." ECF No. 7-2 at 2. Plaintiff also provides a record of a hearing in which Plaintiff was found "not guilty" of the rule violation of kicking his door because Plaintiff "was the victim of attack" and Plaintiff "kicked door to get CO's attention." *Id.* at 4. The report notes that Plaintiff "explain[ed] . . . he would be assaulted." *Id.*

Defendants offer a recording of Plaintiff's phone call with family a few weeks after the assault. In the phone call, Plaintiff reported that Perry had ordered that Plaintiff leave and threatened to assault Plaintiff. ECF No. 24-12, Exhibit 1b at 13:15–13:25. Plaintiff also reported that the two inmates had previously fought, were separated by the guards, and then were placed back in the same cell. *Id.* at 16:15–16:45. On the day before the assault, Plaintiff kicked the door for hours seeking help. *Id.* at 15:10–15:25. Plaintiff reportedly told Ferraro that Perry told him to move out of the room. *Id.* at 15:25–15:35. Ferraro responded, "What'd you do?" *Id.* at 15:35–15:40. Plaintiff responded that he didn't do anything except Perry "wants me out of the room."

*Id.* at 17:40–17:45. Ferraro just walked away. *Id.* at 17:45–17:52. Plaintiff states that he then wrote a complaint. *Id.* at 18:40–18:47. When Defendant Wiles came on shift next, Plaintiff told Wiles that he feared Perry and must be moved. *Id.* at 19:10–19:20. Right before the fight, Plaintiff reports that Perry told Wiles, "If you don't move him, I'm going to kill him." *Id.* at 19:20–19:30. Wiles responded that he needed to finish doing a count of the inmates and walked away. *Id.* at 19:35–19:50.

Defendants also offer a video of February 23, 2020. *See* ECF No. 24-13, Exhibit 2a. The video has no sound. Around 2:40pm, Defendants Wiles is seen stopping at Plaintiff's cell for approximately ten seconds. *Id.* at 5:39–5:49. Wiles then walks down the cellblock but then turns suddenly and goes back to Plaintiff's cell while appearing to alert other guards to Plaintiff's cell. *Id.* at 5:50–6:00. Within five to ten seconds, a group of guards arrive and run to Plaintiff's cell. *Id.* at 6:00–6:30. Two inmates are removed from the cell and led away in restraints. *Id.* at 6:49–7:35.

Defendants also offer the report from an investigation into the incident. *See* ECF No. 24-3 at 87. Plaintiff told the investigator that he had been having issues with Perry since the day before and that he told Defendant Wiles of Perry's threats immediately before the incident happened. *See id.* In the incident report, Wiles stated that he paused at the door because he thought he heard noises of a physical altercation. Wiles then radioed for backup and waited until additional officers arrived. *See id.* at 88. Perry himself was interviewed for the incident report, and he stated that the two inmates were "getting along fine" until he saw that Plaintiff was putting in request forms to be put into protective custody. *See id.* Perry stated that he was afraid that Plaintiff was going to accuse him of wrongdoing and ordered Plaintiff to change cells. *Id.* When Perry saw that the guards did not seem likely to move Plaintiff, Perry said, "[I] beat

[Plaintiff] up, I'm not going to lie." *Id.*; *see also* ECF No. 7 at 8 (alleging that Perry "told Officer Wiles that if he did not move [Plaintiff] out of the cell right at that very moment, he was in fact going 'to beat the [expletive] out of' [Plaintiff]").

Plaintiff was seriously injured by Perry and thus has satisfied the objective prong. *See Pressly*, 816 F.2d at 979 ("The eighth amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm[.]"); *see also Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (beating that left plaintiff in the hospital with "ruptured spleen, a punctured lung, some broken ribs, and numerous bruises and abrasions" would "qualify as 'significant' under th[e] first element.").

As to the subjective prong, "[a] prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the 'substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970 (quotation marks omitted)). "Direct evidence of actual knowledge is not required." *Id.*

The record could reasonably support Plaintiff's version of events. *Compare Scott*, 550 U.S. at 378 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Plaintiff's assertions to his family and in the incident report are mainly consistent with his affidavit. In the

video, Wiles is shown pausing at Plaintiff's cell door for about ten seconds. *See* ECF No. 24-13, Exhibit 2a, 5:39–5:49. Wiles then turns away and walks down the cell block. *See id.* 5:50–5:56.

Viewed in the light most favorable to Plaintiff, it is plausible that Wiles did stop at Plaintiff's door, that Plaintiff did inform Wiles that Perry would imminently attack him and that Perry himself confirmed this, and that Wiles instead continued his count of the cell block. It is also plausible, as Plaintiff attests, that Plaintiff alerted Defendant Ferraro during Ferraro's shift earlier of his specific fear of Perry. Plaintiff reports that he repeatedly kicked his door over a two-day period to get attention from the guards to alert them to the specific risk he faced. *See Makdessi*, 789 F.3d at 133 ("[P]rison officials may not simply bury their heads in the sand and thereby skirt liability."). The evidence provided by Defendants does not settle the dispute of fact as to whether Defendants Ferraro and Wiles were "deliberately indifferent" to Plaintiff's risk of harm from Perry. *See Witt v. W. Virginia State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (summary judgment should be denied when "the video from [defendant's] dashboard camera does not compel adoption of the [defendant's] version of the facts and rejection of [plaintiff's]."). Instead, Plaintiff has established a dispute of fact as to whether Defendants Ferraro and Wiles knew and appreciated that Perry posed a particular and imminent danger to Plaintiff. *Compare Danser*, 772 F.3d at 348 ("Because the record lacks any evidence that [Defendant] knew that [an inmate] posed a particular danger to [Plaintiff], the record as a matter of law fails to show that [Defendant] must have appreciated that his act of leaving [Plaintiff] and [Defendant] together in an unsupervised area created an excessive risk to [Plaintiff's] safety on that basis.").

Thus, based on the record, a reasonable jury could conclude that Defendants Wiles and Ferraro were specifically forewarned of Perry's threat to assault Plaintiff and yet took no action.

Plaintiff has thus met his burden in establishing a dispute of fact as to the personal responsibility of Defendants Wiles and Ferraro. *See Ramachandran v. Nottolini*, 902 F. Supp. 158, 159 (N.D. Ill. 1995) (explaining that the "personal responsibility" requirement is satisfied if "'an official acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.'") (internal quotations and citations omitted).[11]

However, Plaintiff has not established that any other Defendant "personally caused" a deprivation of rights. *See Roberts v. Prince George's Cty., MD*, 157 F. Supp. 2d 607, 609 (D. Md. 2001) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Plaintiff makes no specific allegations against Defendants Nasuti, Wright, Draper, Singleton, or Blair. Plaintiff has also not established any supervisory liability. "It is axiomatic that liability under 42 U.S.C. § 1983 must be premised on personal conduct and cannot rest on respondeat superior." *Nichols v. Maryland Corr. Inst. Jessup*, 186 F. Supp. 2d 575, 583 (D. Md. 2002) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 691–695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "It is correct that 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). But Plaintiff has not established facts to show "supervisory liability," and thus Defendants Dovey, Covington, Cunningham, Hendershot, and Tew are also not liable on this claim. *See Shaw v. Stroud*, 13 F.3d 791, 789 (4th Cir. 1994).[12]

---

[11] Defendants argue that Ferraro was not on duty on February 23, the day of the assault, ECF No. 24-1 at 12, but Plaintiff alleges that he told Ferraro of the risk the day before the assault, *see* ECF No. 7 at 6, 7. Ferraro's name also appears on the schedule sheet for February 22. *See* ECF No. 24-4 at 28.

[12] Plaintiff alleges that Perry had a violent reputation and that Defendants Covington, Hendershot, and Singleton all knew that Perry was "a known gang-related violent inmate who had been involved in two separate stabbing incident[s], including a most recent stabbing incident which occurred on February 19, 2020." ECF No. 28-1 ¶ 11. However, Plaintiff establishes no facts to share how Defendants Covington, Hendershot, and Singleton knew that Perry's history would place Plaintiff in particular danger.

### B. Qualified Immunity

"To overcome the qualified immunity defense at the summary judgment stage, the plaintiff must have shown facts that make out a violation of a constitutional right, and the right at issue must have been 'clearly established' at the time of the defendant's alleged misconduct." *Thompson*, 878 F.3d at 97 (citing *Pearson v. Callahan*, 555 U.S. 223, 242, 129 S. Ct. 808, 821, 172 L. Ed. 2d 565 (2009)). As noted, Plaintiff has established a dispute of fact as to the deliberate indifference of Defendants Wiles and Ferraro, which is a violation of the Eighth Amendment. *See, e.g.*, *Toomer v. Willies*, No. 12-cv-83-JKS, 2015 WL 9259315, at *6 (D. Md. Dec. 18, 2015) ("The court has already found that Plaintiff has produced evidence which would support a finding of deliberate indifference to his health or safety. A similar analysis in the qualified immunity context leads to the same result.").

The right also must be "clearly established" in the specific context of the case. The "clearly established" inquiry "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 822, 172 L. Ed. 2d 565 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal quotation marks omitted)). "[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002) (quoting *Saucier v. Katz*, 533 U.S. at 206). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the

unlawfulness must be apparent.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal citations omitted)).

A prisoner's right to reasonable protection from other inmates is a clearly established right. Precedent is clear that if alleged facts "amount[] to a deliberately indifferent failure to protect petitioner's safety, [this is] a violation of petitioner's Eighth Amendment rights." *Farmer*, 511 U.S. at 831. "A prison official's duty under the Eighth Amendment is to ensure "'reasonable safety[.]'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)). "That the Eighth Amendment protects against future harm to inmates is not a novel proposition. The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480–81, 125 L. Ed. 2d 22 (1993) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199, 109 S. Ct. 998, 1005, 103 L. Ed. 2d 249 (1989)). "Because being assaulted in prison is not 'part of the penalty that criminal offenders pay for their offenses against society,' prison officials are responsible for 'protect[ing] prisoners from violence at the hands of other prisoners.'" *Danser*, 772 F.3d at 346 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342, 101 S. Ct. 2392, 2397, 69 L. Ed. 2d 59 (1981) (internal quotations and citations omitted)).

Thus, the Court concludes that, at the time of Perry's attack on Plaintiff, "the state of pre-existing law was such that reasonable prison guards in the defendants' position would have understood that doing nothing in response to [Plaintiff's] requests in light of the circumstances of this case violated [Plaintiff's] rights." *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773–74 (4th Cir. 2003).

## IV.    CONCLUSION

For the reasons discussed, Defendants' Motion for Summary Judgment is granted in part and denied in part. A separate Order follows.


Dated:  March    30, 2022                              /s/_____
                                                        GEORGE J. HAZEL
                                                        United States District Judge